# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

Tonyia Whorton et al.　　　　　*

　　　　　　　　　　　　　　　*　　Civil Action No. CCB-19-413

v.　　　　　　　　　　　　　　*

　　　　　　　　　　　　　　　*

Mack Trucks, Inc., et al.　　　　*

## MEMORANDUM

The plaintiffs, thirty-seven employees of Mack Trucks, Inc. ("Mack Trucks") and/or Volvo Group North America, LLC ("Volvo")[1] and dues paying members of International Union, United Automobile Aerospace and Agricultural Implement Workers of America ("UAW") and/or Local No. 171 of UAW ("Local 171"), allege that Mack Trucks and Volvo (the "employer defendants") have illegally deducted money from their paychecks, and that UAW and Local 171 (the "union defendants") have breached their duty to fairly represent the plaintiffs. The plaintiffs filed their complaint in the Circuit Court of Maryland for Washington County on January 10, 2019, and the defendants removed the case to this court on February 12, 2019. Now pending are the union defendants' motion to dismiss[2] and the plaintiffs' motion for leave to amend their complaint. The motions have been fully briefed and no oral argument is necessary.

## FACTS AND PROCEDURAL HISTORY

The union defendants are the plaintiffs' exclusive collective bargaining agent under the collective bargaining agreement ("CBA"). (Compl. ¶ 52). In 2011 and 2012, the employer defendants and union defendants signed a memorandum of understanding ("MOU") and memorandum of agreement ("MOA") regarding how the seniority of temporary employees who are later hired as permanent employees would be calculated. (*Id.* ¶¶ 60, 61). At some point, however, the seniority and, in particular, the employees' vacation entitlements became disputed,

---

[1] Volvo denies that it employed the plaintiffs. (ECF 10, Answer and Defenses of Defendants Mack Trucks, Inc. and Volvo Group North America, LLC ¶ 63).

[2] The employer defendants do not move to dismiss and have filed an answer. (ECF 10).

1

and the union filed a grievance (the "wage grievance") on November 7, 2016. (*Id.* ¶ 53; ECF 11-2 at 34, 2016 Wage Grievance).[3] The union, however, withdrew that grievance on September 19, 2017,[4] (Compl. ¶ 53; ECF 11-2 at 36, Withdrawal of Grievance), and on October 25, 2017, entered into an MOU with the employer defendants regarding the repayment of vacation payments the employees were alleged to have received in error (ECF 11-2 at 46, MOU Regarding the Overpayment of Vacation Benefits ("2017 MOU")). According to the plaintiffs, this MOU "improperly attempted to retroactively nullify the seniority terms of the" earlier agreements. (Compl. ¶ 72).

Sometime in 2017 or 2018, the employer defendants began informing the plaintiffs that they would need to repay the amount they had been overpaid for used and unused vacation time. (*Id.* ¶ 65). On April 11, 2018, the union consulted an attorney, who advised the union that the repayments were in violation of the 2011 MOU and 2012 MOA. (*Id.* ¶ 68). Local 171's president, David Dopp, also sought legal advice from this lawyer personally regarding the seniority status and wage deductions and, after he did so, the lawyer was unable to represent the plaintiffs because doing so would create a conflict of interest with Dopp. (*Id.* ¶ 72). The plaintiffs allege that David Dopp "appears to have intentionally created a conflict of interest," and on July 5, 2018, the plaintiffs sent Dopp a demand to "immediately obtain replacement counsel . . . due to Mr. Dopp's improper actions." (*Id.* ¶ 72–73).

---

[3] The union defendants have attached to their motion to dismiss the collective bargaining agreement, the wage grievance, the withdrawal of the wage grievance, the NLRB charge concerning the withdrawal of the wage grievance, the NLRB's dismissal of the charge concerning the withdrawal of the wage grievance, the 2017 MOU, and the July 5, 2018, demand letter. In reviewing a Rule 12(b)(6) motion to dismiss, the court may "consider documents incorporated into the complaint by reference . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (internal quotation marks and citations omitted). As there has been no objection by the plaintiffs, the court will consider these documents.

[4] Donald Fultz filed an NLRB charge regarding the withdrawal of the wage grievance on March 12, 2018. (ECF 11-2 at 40, NLRB charge). The charge was dismissed on June 28, 2018. (ECF 11-2 at 42, NLRB's dismissal of charge). Fultz is not a plaintiff in this case.

2

The plaintiffs allege in Count III[5] of their complaint that the union defendants breached their duty of fair representation by "withdrawing Plaintiffs' Wage Grievance, failing/refusing to initiate/demand arbitration of Plaintiffs' Wage Grievance, failing/refusing to seek fair compensation for Plaintiffs' Wage Grievance, and/or sabotaging Plaintiffs' rights to full compensation and/or seniority status to which [they] are/were entitled." (*Id.* ¶ 74).

In the plaintiffs' corrected motion for leave to amend their complaint, they seek to add another allegation that the union defendants attempted to thwart, refused to process, and refused to pursue grievances filed by the plaintiffs in December 2018 relating to the wage deductions made between June 2018 and December 2018. (ECF 19-2, Proposed Am. Compl. ¶ 74).

## STANDARD OF REVIEW

Motion to Dismiss:

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable

---

[5] The plaintiffs also allege a violation of Maryland statute and breach of contract, and request declaratory judgment/injunctive relief, against the employer defendants. Those claims are not at issue here.

3

conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

Motion to Amend

Leave to amend should be freely granted under Rule 15(a), and amendments are generally accepted absent futility, undue prejudice, or bad faith. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009) (explaining that leave to amend "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile.").

## DISCUSSION

Motion to Dismiss:

The union defendants argue in their motion to dismiss that the plaintiffs' claim for breach of the duty of fair representation ("DFR claim") is time-barred, as the complaint was filed past the six-month statute of limitations set forth in Section 10(b) of the National Labor Relations Act ("NLRA"). The plaintiffs argue that the applicable statute of limitations is Maryland's three-year statute of limitations for contract claims.

*The applicable statute of limitations:*

The parties first disagree as to whether the plaintiffs can bring a DFR claim under state law, or whether they must bring it under federal law.[6] As the Fourth Circuit has stated:

> Section 301 of the [Labor Management Relations Act ("LMRA")] provides that suits for violation of collective-bargaining agreements may be filed in federal court. . . . [A] purportedly state law claim, the resolution of which depends substantially upon the

---

[6] The court also notes that whether the claim arises under state or federal law is integral to whether the court has subject matter jurisdiction, as the defendants removed the case on the basis that the plaintiffs' claims arise under federal law. (ECF 1, Notice of Removal, ¶ 15).

4

analysis of a collective-bargaining agreement's terms, must either be treated as a claim under § 301 or be dismissed as preempted under federal labor law.

*Davis v. Bell Atl.-W. Virginia, Inc.*, 110 F.3d 245, 247 (4th Cir. 1997) (citations omitted). Multiple courts have held that state law claims by an employee against her union alleging breach of the duty of fair representation[7] are preempted, especially where the resolution of that claim would require interpreting the CBA. *See Taylor v. Giant Food, Inc.*, 438 F. Supp. 2d 576, 583 (D. Md. 2006) ("[F]air representation claims completely pre-empt state law . . . even if a plaintiff characterizes his or her claims as state-law claims") (and collecting cases, *id.* at 583–84); *Diggs v. Drivers, Chauffeurs & Helpers Local Union No. 639*, Civil No. PJM 11-2404, 2012 WL 3774163, at *2 (D. Md. Aug. 29, 2012)[8] ("[I]t is well-established that claims that require interpretation of a collective bargaining agreement or implicate a union's duty of fair representation are preempted by federal law."); *Ngamby v. Hamburg*, Civil No. TDC-15-0931, 2015 WL 6674148, at *3 (D. Md. Oct. 29, 2015) ("As a union member, Ngamby's employment relationship with Greyhound was governed by a collective bargaining agreement, and her breach of contract claim is most fairly read as alleging a violation of the duty of fair representation under the collective bargaining agreement. Such a claim is completely preempted by federal labor law and thus was properly removed.")

Here, the plaintiffs' claim is based on the union's position as their exclusive bargaining representative, and resolution of the claim would require interpretation of the CBA. *See Ramey v. Int'l Bhd. of Elec. Workers*, 580 F. Supp. 2d 44, 47 (D.D.C. 2008) ("To the extent that the Union had a duty to Ramey, that duty is defined and governed by a [CBA], as well as applicable

---

[7] The duty of fair representation is implied in the National Labor Relations Act ("NLRA"). *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983) ("The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the [NLRA]."). A union breaches the duty of fair representation if its "conduct toward any of its members was arbitrary, discriminatory, or in bad faith." *Jeffreys v. Comm. Workers of Am., AFL-CIO*, 354 F.3d 270, 274 (4th Cir. 2003) (internal quotation marks and citation omitted).

[8] Unreported decisions are cited for the soundness of their reasoning, not for any precedential value.

federal statutes. To assess whether the Union failed to properly discharge a duty owed to plaintiff requires an interpretation of the CBA."). Additionally, much of the misconduct alleged by the plaintiffs involves the grievance and arbitration procedures, which arise from the CBA. *See* Compl. ¶ 52 ("The Union is Plaintiffs' 'exclusive collective bargaining agent' under the CBA"); ¶ 53 (arbitration process permitted under the CBA); ¶ 74 (the union breached its duty by withdrawing the wage grievance and refusing to demand arbitration). Therefore, to the extent plaintiffs assert a state law DFR claim, it is preempted, and must instead arise under federal law.

The plaintiffs cite two Maryland state court cases in support of their argument that they can bring a state law DFR claim. *See Stanley v. Am. Fed. of State and Mun. Employees Local No. 553*, 165 Md. App. 1, 15 (2005); *Byrne v. Mass Transit Admin.*, 58 Md. App. 501, 508 (1984) ("The duty of fair representation does not arise under the LMRA, but rather as a private cause of action under State law for breach of contract."). As the union defendants point out, however, the cases cited by the plaintiffs both involved claims by public sector employees. *See Stanley*, 165 Md. App. at 5 (the plaintiff worked for the City of Cumberland); *Byrne*, 58 Md. App. at 507 (the MTA, the plaintiff's employer, "is an agency and instrumentality of the State of Maryland"). But because of the NLRA's definition of "employer," "neither the NLRA nor the LMRA covers public employees" of a State or a political subdivision, and those employees cannot "sue their unions under the NLRA for a breach of the duty of fair representation." *Adams v. Am. Fed. of State*, 167 F. Supp. 3d 730, 741 (D. Md. 2016) (citations omitted); *see Byrne*, 58 Md. App. at 507 ("Since § 152(2) of the LMRA specifically excludes the State, and implicitly its agencies, from the purview of the Act, an action against MTA under claim of the authority of the LMRA will not lie."). Therefore, the DFR claims at issue in *Byrne* and *Stanley* could not be

brought under the federal labor statutes, but those cases are distinguishable, as the plaintiffs here are private sector employees.[9]

Accordingly, the applicable statute of limitations for the plaintiffs' DFR claim is six months. As the Supreme Court held in *DelCostello v. International Brotherhood of Teamsters*, in a claim against an employer for breach of the CBA and against the union for breach of its duty of fair representation, the federal statute of limitations in § 10(b) of the National Labor Relations Act should govern both claims. 462 U.S. 151, 154–55 (1983).[10] Section 10(b) provides for a six month statute of limitations. 29 U.S.C. § 160(b). Therefore, "[a] plaintiff has only six months after the cause of action arose to file a claim brought under § 301 of the LMRA against a union for breaching its duty of fair representation." *Ramey*, 580 F. Supp. 2d at 48.

*Whether the DFR claim is untimely:*

Given this six-month statute of limitations, the union defendants argue that the DFR claim is untimely. The affirmative defense that a claim is time-barred is not typically considered at the motion to dismiss stage. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Such a defense may be reached at this stage only "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." *Id.*

"The six-month limitations period begins to run from the time when [the plaintiff] discovered his injury or should have discovered it through the exercise of reasonable diligence." *Taylor*, 438 F. Supp. 2d at 591 (internal quotation marks and citation omitted). As the Fourth Circuit has explained:

---

[9] The plaintiffs also cite to a New Mexico case, *Akins v. United Steel Workers of Am., AFL-CIO, CLC, Local 187*, which also involved a city employee. 148 N.M. 442, 444 (2010).
[10] Multiple courts of appeal have held that the "six-month statute of limitations also is applicable where a plaintiff asserts a [DFR] claim against a union but does not also assert a claim against the employer for breach of a CBA." *Taylor*, 438 F. Supp. 2d at 589.

7

> Generally speaking, a cause of action for breach of the duty of fair representation accrues at the point where the grievance procedure has been exhausted or otherwise breaks down to the employee's disadvantage. It is only at this point that the employee is cognizant of any alleged breach of the duty owed him by the union. The standard is an objective one; namely, when the plaintiff knew, or should have known through the exercise of due diligence, that his claim had accrued.

*Dement v. Richmond, Fredericksburg & Potomac R. Co.*, 845 F.2d 451, 460 (4th Cir. 1988) (internal quotation marks and citations omitted).

As the plaintiffs filed their complaint on January 10, 2019, any alleged misconduct occurring more than six months prior, before July 10, 2018, of which the plaintiffs knew or should have known, is time-barred. Therefore, to the extent the plaintiffs' DFR claim is based on the union defendants' withdrawal of the 2016 wage grievance, entering into the 2017 MOU, or creating a conflict of interest with the attorney, it is time barred. The wage grievance was withdrawn on September 19, 2017, (Compl. ¶ 53), and even if the plaintiffs did not immediately learn that it was withdrawn, they should have known at least by June 4, 2018, when the employer defendants began deducting money from their wages. (*Id.* ¶ 69). Although it is not clear when the plaintiffs learned of the 2017 MOU or the creation of the conflict of interest, they knew about it at least as of July 5, 2018, as both were referenced in the demand letter sent to David Dopp. (Compl. ¶ 73 (demand made on behalf of the plaintiffs); ECF 11-3 at 3[11]).

The plaintiffs argue that the statute of limitations period is restarted every time the employer defendants deduct money from their paychecks. This is incorrect as to the DFR claim against the union defendants. As the above makes clear, the statute of limitations began running when the plaintiffs learned or should have learned of the defendants' alleged breach of the DFR,

---

[11] Although an affirmative defense may only be decided at the motion to dismiss stage where all facts necessary clearly appear on the face of the complaint, the court may also consider documents incorporated in the complaint, such as the July 5, 2018, demand letter.

not every time the plaintiffs feel the effects of the alleged breach.[12] Therefore, that they continue to have money deducted from their paycheck is not relevant to when their cause of action against the union defendants began.

*Request for punitive damages*:

Punitive damages are not available in duty of fair representation actions. *Peterson v. Air Line Pilots Ass'n, Int'l*, 759 F.2d 1161, 1167 (4th Cir. 1985); *Shufford v. Truck Drivers, Helpers, Taxicab Drivers, Garage Employees & Airport Employees Local Union No. 355*, 954 F. Supp. 1080, 1085 (D. Md. 1996) (punitive damages are not available in a case alleging a breach of the duty of fair representation). The plaintiffs' only argument for punitive damages is that the plaintiffs' claim arises under Maryland common law, not federal law. As discussed above, plaintiffs' DFR claim must arise under federal law or else it is preempted. Therefore, punitive damages are not available for the DFR claim.

Accordingly, the court will grant the union defendants' motion to dismiss.

Motion to Amend:[13]

In their corrected motion for leave to file an amended complaint, the plaintiffs seek to add an allegation regarding the union defendants' refusal to process grievances in December 2018.[14] (Proposed Am. Compl. ¶ 74). The union defendants argue that the proposed amendment is

---

[12] Additionally, the statute of limitations for the DFR claim relates to misconduct by the union defendants. The alleged misconduct by the union defendants is the alleged breach of the DFR, not the deduction of money from the plaintiffs' paychecks.

[13] The procedural history is somewhat confusing. The plaintiffs filed a motion to amend (ECF 15) on April 9, 2019, but they did not file a proposed amended complaint. The employer and union defendants both filed oppositions (ECF 16 and 18) on April 23, 2019, and on that day the plaintiffs replied to the employer defendants' opposition. (ECF 17). The plaintiffs then filed a corrected motion to amend (ECF 19) on May 7, 2019, this time with a proposed amended complaint and redline version, and on that same day filed a reply (ECF 20) to the union defendants' opposition. The union defendants then filed an opposition to the corrected motion to amend (ECF 21), which is largely the same as the first opposition they filed (ECF 19). The employer defendants joined in the union defendants' opposition (ECF 22). The plaintiffs then filed a reply (ECF 23), which is largely the same as their first reply (ECF 20) to the union defendants' opposition.

[14] The December 2018 grievances and the company's responses are attached to the plaintiffs' opposition to the motion to dismiss. (ECF 14-1 at 4–35).

9

futile, as the December 2018 grievances are duplicative of the 2016 wage grievance, and the plaintiffs cannot restart the statute of limitations simply by asking the union defendants to reconsider their decision to withdraw the 2016 wage grievance. *See Mincey v. U.S. Postal Service,* 879 F. Supp. 567, 572–73 (D.S.C. 1995) (the statute of limitations does not run again when the union merely reiterates its previous final decision not to pursue a grievance). In response, the plaintiffs argue that the 2018 grievances are not the same as the 2016 wage grievance, as that grievance was for the "denial of vacation time entitlements" while the December 2018 grievances "were not just for the improperly credited status but specifically for the unlawful deductions of wages." (ECF 23, Pls.' Reply to Union's Opp'n to Pls.' Corrected Mot. for Leave to Amend Compl. at 2).

As an initial matter, the court notes that the plaintiffs' characterization of the 2016 wage grievance is seemingly contradicted by the plaintiffs' own complaint, which states that the wage grievance was "related to the . . . wage deductions." (Compl. ¶ 53; Proposed Am. Compl. ¶ 53). It is not clear, however, whether the 2018 grievances and the 2016 grievance are duplicative, especially as it appears that the 2016 grievance did not reference any potential wage deductions. Further, the 2017 MOU, which was signed after the withdrawal of the 2016 wage grievance, states, after a paragraph about repaying the vacation overpayment, that "Article 5 of the 2016 Mack Master Agreement would still be applicable if the Union elects to file a grievance." (ECF 11-2 at 47). This implies that it was at least contemplated that another grievance regarding the repayment or deductions might be filed. The court does not have sufficient information at this time to determine whether the plaintiffs knew or should have known, prior to July 10, 2018, that the union defendants had made a final decision not to pursue grievances relating to the wage

deductions, or to determine whether the December 2018 grievances were merely a request for the union to reconsider its earlier decisions.[15]

The statute of limitations for the DFR claim as it relates to the 2018 grievances would begin to run once the grievance process was exhausted or broke down, which occurred when the union allegedly refused to process the grievances or take them to Step 2 after they were denied. According to the proposed amended complaint, this occurred in December 2018, and thus, the claim based on this alleged breach could be timely.[16]

The defendants also argue that the proposed amendment relating to the December 2018 grievances would be futile because "the Union does not have exclusive authority to vindicate Plaintiffs' claims that the Company violated Maryland state law." (ECF 21, Defs.' Opp'n to Pls.' Corrected Mot. for Leave to Amend at 11). It appears that the plaintiffs, however, are instead arguing that the union defendants did not properly process their grievances regarding the deductions. This does not involve vindicating the plaintiffs' state law claims. Therefore, the court cannot find that the DFR claim based on the 2018 grievances would be futile, and will grant the plaintiffs' motion to amend, consistent with the court's previous rulings regarding the time-barred claims in the initial complaint.

---

[15] The court notes that in its responses to the December 2018 grievances, the company (presumably, Mack Master) stated that it had already addressed the issues in its response to the 2016 wage grievance. (*See e.g.* ECF 14-1 at 6, Response to Whorton's Grievance). That the company appeared to find the grievances duplicative, though, is not determinative for the court.

[16] The union defendants argue that the plaintiffs' claim would still be untimely as "six months after the actual deductions began in June 2018 is December 2018." (ECF 21, Defs.' Opp'n to Pls.' Corrected Mot. for Leave to Amend at 9). The statute of limitations, though, would begin running at the time the grievance process was exhausted or broke down. The union defendants also point to plaintiff Tonyia Whorton's NLRB charge (ECF 18-1), which states the union failed to assist employees since May 2018. That the union failed to assist employees beginning in May 2018, however, does not indicate that the grievance process became exhausted or broke down at that point, which is when the statute of limitations would begin to run.

## CONCLUSION

For the reasons stated above, the court will grant the union defendants' motion to dismiss and will grant the plaintiffs' corrected motion for leave to file an amended complaint to the extent that it asserts a DFR claim based on the failure to process and/or pursue the December 2018 grievances. A separate order follows.

12/23/19
Date

/s/ CCB
Catherine C. Blake
United States District Judge